IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **YOST FOODS, INC.,** | **CASE NO. 1:21-cv-00794** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **BUNGE OILS, INC.,** | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Currently pending is Defendant Bunge Oils, Inc.'s ("Bunge") Partial Motion to Dismiss Plaintiff's Amended Complaint.[1] (Doc. Nos. 11, 25.) Plaintiff Yost Foods, Inc. ("Yost") filed a Memorandum in Opposition on June 4, 2021, to which Bunge replied on June 11, 2021. (Doc. Nos. 16, 17.) For the following reasons, Bunge's Partial Motion to Dismiss is granted.

I.  **Background**

Yost is a manufacturer and distributor of custom food ingredients headquartered in Medina County, Ohio. (Doc. No. 24, ¶ 6.) Sometime prior to August 17, 2009, Yost began exploring the possibility of entering into a business relationship with The C.F. Sauer Company's margarine manufacturer and subsidiary CFS West Foods ("Sauer/CFS") whereby Sauer/CFS would manufacture and co-pack certain margarine products on behalf of Yost. (*Id.* at ¶¶ 8-9.) On August

---

[1] Bunge filed its Partial Motion to Dismiss on May 21, 2021. (Doc. No. 11.) On July 30, 2021, Yost filed an Amended Complaint in which it changed the identity of the defendant from "Bunge North America" to "Bunge Oils, Inc." and modified its alleged damage figure. (*See* Doc. Nos. 24, 25.) Bunge renewed its Partial Motion to Dismiss on August 5, 2021 and incorporated by reference its May 21, 2021 Partial Motion to Dismiss. (Doc. No. 25.) Further, the parties stipulated that the Court may treat Yost's June 4, 2021 Opposition and Bunge's June 11, 2021 Reply as renewed and submitted. (*Id.*) Accordingly, the Court will evaluate the Partial Motion to Dismiss and its related briefing, even though the Amended Complaint was filed a little over two months after the Partial Motion to Dismiss.

17, 2009, Yost and Sauer/CFS entered into a Confidentiality and Business Agreement (the "NDA") to allow the parties to explore whether they wished to transact business with one another. (*Id.*)

Under the NDA, both parties acknowledged that each would receive certain of the other's proprietary information to determine whether to do business together and to perform their respective obligations should the two enter a business relationship. (*Id.* at ¶ 9; *see also* Doc. No. 24, Ex. A, ¶ 1.) The NDA prohibited either party from disclosing the other's proprietary information to third parties and from using the other's proprietary information for its own benefit. (*Id.* at ¶ 10; Doc. No. 24, Ex. A, ¶ 2.) Additionally, the NDA's prohibitions on the disclosure or use of proprietary information would remain in effect "[n]otwithstanding the conclusion or termination of the parties' relationship or potential or actual Transaction . . . ." (Doc. No. 24, Ex. A, ¶ 9.) Moreover, the parties agreed that the NDA could not "be assigned by a party without the other party's prior written consent, and shall be binding upon and inure to the benefit of both parties and their successors." (*Id.* at ¶ 12.) After executing the NDA, Yost and Sauer/CFS commenced a business relationship in which Sauer/CFS manufactured and co-packed certain Yost margarine products. (Doc. No. 24, ¶ 12.)

Around September 9, 2011, Defendant Bunge Oils, a global agribusiness and food company, purchased The C.F. Sauer Company's margarine assets, including its subsidiary CFS West Foods. (*Id.* at ¶ 13.) According to Yost, it received a letter from Bunge addressed to "Dear Customer," in which Bunge indicated that it would continue to offer the same line of margarine products that Sauer/CFS had previously provided. (*Id.*; *see also* Doc. No. 24, Ex. B.) In its "Dear Customer" letter, Bunge referred to C.F. Sauer as "our predecessor." (*Id.*)

From September 2011 through July 2020, Yost and Bunge continued the same business relationship that Yost maintained with Sauer/CFS wherein Bunge manufactured and co-packed

2

certain margarine products on Yost's behalf. (Doc. No. 24, ¶ 15.) One such product was known as 80% Uncolored Liquid Margarine ("80% ULM"). (*Id.* at ¶ 16.) According to Yost, 80% ULM was one of its most popular products that Bunge manufactured. (*Id.*) Yost alleges that its 80% ULM is unique because it contains "a certain amount of a proprietary flavoring ingredient solely produced by Yost known as FL8035." (*Id.*)

Yost alleges that sometime between July 21, 2020 and August 14, 2020, one of its longstanding customers, Bob Evans Farms ("BEF"), unexpectedly notified Yost that it would no longer be purchasing 80% ULM from Yost. (*Id.* at ¶¶ 20-21.) Yost alleges that BEF's termination "was astonishing" because BEF "regularly purchased large quantities of 80% ULM from Yost" and BEF "had been one of Yost's best customers." (*Id.*)

On August 28, 2020, shortly after BEF terminated its contract with Yost, Bunge allegedly "placed a surprisingly large order with Yost for FL8035." (*Id.* at ¶ 22.) Upon investigation, Yost alleges that it discovered Bunge "had secured BEF's business from Yost by offering to sell to BEF the same 80% ULM to BEF at a lower price than Yost sold to BEF." (*Id.* at ¶ 23.) Yost alleges that Bunge either divulged Yost's proprietary information to BEF, or else used Yost's proprietary information for Bunge's own benefit—namely to secure BEF's business. (*Id.* at ¶¶ 24-25.)

Yost now brings three claims, and also seeks injunctive relief, against Bunge. (Doc. No. 24.) Bunge filed the instant Partial Motion to Dismiss on May 21, 2021, seeking dismissal of Yost's Count One—Breach of Contract only. (Doc. No. 11-1.) Yost filed an Opposition to Bunge's Motion, to which Bunge replied. (Doc. Nos. 16, 17.)

3

**II.  Standard of Review**

Bunge moves to dismiss Yost's breach of contract claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[2]  Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

---

[2] The Court notes that Yost couches its Opposition in terms applicable to a motion for summary judgment, rather than a motion to dismiss.  (*See, e.g.,* Doc. No. 16, PageID# 289, asserting that the Complaint "creates a genuine issue of material fact").  At the pleadings stage, the Court accepts Yost's factual allegations as true and will apply the familiar Fed. R. Civ. P. 12(b)(6) standard, as outlined above, to Bunge's Partial Motion to Dismiss.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

**III. Analysis**

In Count 1, Yost alleges that Bunge breached the Yost-Sauer/CFS NDA. (Doc. No. 24, ¶¶ 34-42.) Bunge moves to dismiss Yost's breach of contract claim, arguing that Yost cannot impose the NDA against Bunge, a non-signatory to the NDA, because Bunge did not expressly or impliedly assume the NDA's obligations and liabilities pursuant to its Asset Purchase Agreement (the "APA") with Sauer/CFS. (Doc. No. 11-1, PageID# 124-26.) In response, Yost asserts that it indeed stated a breach of contract claim against Bunge because Bunge is Sauer/CFS's legal successor in interest and either expressly and/or impliedly assumed the NDA's obligations and liabilities. (Doc. No. 16, PageID# 283-84.)

In Ohio, "[t]he elements for a breach of contract claim are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure." *Williams v. Richland County Children Servs.*, 861 F. Supp. 2d 874, 885 (N.D. Ohio

5

2011), citing *Telxon Corp. v. Smart Media of Delaware, Inc.*, Case Nos. 22098, 22099, 2005 WL 2292800, at *20 (Ohio App. 9th Dist. 2005). In Ohio, "a contract is binding only upon parties to a contract and those in privity with them." *Samadder v. DMF of Ohio, Inc.*, 798 N.E.2d 1141, 1147 (Ohio 10th Dist. Ct. App. 2003), citing *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.* 608 N.E.2d 830 (Ohio 1992).

Ohio's "well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346-47 (1993) (citations omitted). Thus, "a corporation that purchases the assets of another corporation is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Id.* at 349.

With respect to the first *Welco* exception, a corporation may be held liable if the corporation either expressly or impliedly agrees to assume the liability. *Id.* "An implied agreement to assume a predecessor's contractual liabilities can be established by showing that the successor has rendered performance in accordance with the predecessor's contract without any express contractual obligation to do so." *US Herbs, LLC v. Riverside Partners, LLC*, 711 Fed. App'x 321, 325 (6th Cir. 2017), citing *Mohammadpour v. Thomas*, No. 85474, 2005 WL 1793515 at *2 (Ohio 8th Dist. Ct. App. July 28, 2005); *Ragen v. Hancor, Inc.*, 920 F. Supp. 2d 810, 824 (N.D. Ohio 2013). *See also, e.g., Carpenter v. New Age Logistics*, No. 27689, 2016 WL 515298, at *7 (Ohio 9th Dist. Ct. App. Jan. 27, 2016).

However, "[w]here an Asset Purchase Agreement expressly lists which liabilities are being assumed by the successor . . . the court is not likely to find an implied agreement to assume any liability omitted from that list." *US Herbs, LLC*, 711 Fed. App'x at 325, citing *Howell v. Atl.-Meeco, Inc.*, No. 01CA0084, 2002 WL 857685 at *3 (Ohio Ct. App. Apr. 26, 2002); accord *Harwood v. Avaya Inc.*, No. C2-05-828, 2007 WL 2407054, at *2 (S.D. Ohio Aug. 22, 2007). For the following reasons, the Court concludes that Bunge neither expressly or impliedly assumed the NDA's obligations and liabilities and, thus, Yost's breach of contract claim fails as a matter of law.

First, the Court concludes that there is nothing in Yost's Complaint, the NDA, or the APA to suggest that Bunge *expressly* assumed the NDA's obligations. Yost does not allege that the NDA was assigned to Bunge, nor does Yost identify any portion of the APA in which Bunge assumes the NDA's obligations and liabilities.[3] To the contrary, the APA clearly demonstrates that Bunge did *not* expressly assume the NDA's obligations. Section 2.2(a)(i) of the APA provides:

> (a) Subject to the terms and conditions hereof, on the Closing Date and as of the Effective Time, each Seller agrees to assign and transfer to Buyer and Buyer agrees to assume only the following:
> (i) the obligations of such Seller with respect to the Business under the Contracts listed on Schedule 2.2(a)(i) and the portion of the Shared Contracts that relates to the Business (collectively, the "Assumed Contracts") . . . .

(Doc. No. 11-2, PageID# 156.) Schedule 2.2(a)(i) does not list the NDA—or any contract between Yost and Sauer/CFS—as an Assumed Contract. (*Id.* at PageID# 229-36.) Additionally, in § 2.2(d), Bunge expressly disclaimed any liabilities not assumed in § 2.2(a):

> Except for the Assumed Liabilities expressly provided in Section 2.2(a), Buyer does not hereby and will not assume or become liable for and shall not be obligated to pay or satisfy any obligation, debt or Liability whatsoever, whether fixed, contingent or otherwise, of the Business, the Excluded Business or of any Seller or any other Person

---

[3] To the extent Yost suggests it had no control over the liabilities Bunge assumed in the APA, the Court observes that Yost does not allege that it ever approached Bunge about the NDA or otherwise sought to have Bunge ratify or reaffirm the NDA following Bunge's acquisition of Sauer/CFS. (Doc. No. 16, PageID# 286; Doc. No. 17, PageID# 295.)

7

>
> (the "Excluded Liabilities"), all of which shall remain the responsibility of Sellers after closing. . . .

(*Id.* at PageID# 157.) Therefore, the Court concludes that Bunge did not expressly assume the NDA's obligations and liabilities.

Second, the Court concludes that Bunge did not impliedly assume the NDA's obligations and liabilities. Yost makes two arguments in support of its assertion that Bunge impliedly assumed the NDA's obligations, neither of which is persuasive. First, Yost claims that Bunge announced in its September 2011 "Dear Customer" letter that it was Sauer/CFS's successor in interest, which demonstrates that Bunge impliedly assumed the NDA's obligations. (Doc. No. 16, PageID# 288.) However, Bunge makes no such representation in the letter. The "Dear Customer" letter is generic and contains no reference to Yost or the NDA. (*See* Doc. No. 24, PageID# 359.) Moreover, there is no indication that Bunge intended the word "predecessor" to hold any legal or otherwise significant meaning. Yost does not allege that the letter was drafted by legal counsel or that it was intended to advise Yost of its legal rights with respect to Bunge's acquisition of Sauer/CFS's margarine assets. Rather, it appears that "predecessor" was simply the most convenient way for Bunge to describe C.F. Sauer, which previously owned the assets that Bunge had since acquired.

Further, Yost argues that Bunge rendered performance under the NDA for nine years by continuing to manufacture and co-pack Yost's margarine products without any contractual obligation to do so, and thus, Bunge impliedly assumed the NDA's obligations. (Doc. No. 16, PageID# 287.) While true that a corporation *may* impliedly assume its predecessor's contractual obligations and liabilities if it renders performance in accordance with its predecessor's contract without express contractual obligation to do so, courts are unlikely to find such an implied agreement "[w]here an Asset Purchase Agreement expressly lists which liabilities are being assumed by the successor." *US*

8

*Herbs*, 711 Fed. App'x at 325. As discussed *supra*, the APA expressly lists which contracts Bunge assumed from Sauer/CFS. The APA's schedule of Assumed Contracts does not list the Yost-Sauer CFS NDA (or any other contract related to Yost, for that matter). (Doc. No. 11-2, PageID# 229-36.) Moreover, the APA expressly disclaimed all other liabilities. (*Id.*) Thus, the Court presumes that Bunge did not intend to impliedly assume the NDA's obligations.

Yost's cited cases, *State, ex rel. Lake Erie Construction* and *Albright v. Varicon*, do not advance its argument that Bunge impliedly assumed the NDA's obligations. Yost cites the Ohio Supreme Court's decision in *State, ex rel. Lake Erie Constr. Co. v. Indus. Comm. Ohio*, 62 Ohio St.3d 81 (1991), for the proposition that "a legal successor in interest is 'the transferee of a business in whole or in part.'" (*Id.* at PageID# 285, quoting *Lake Erie*, 62 Ohio St.3d at 83, internal quotations omitted.) Thus, according to Yost, Bunge is Sauer/CFS's legal successor in interest and is bound by the NDA. (*Id.* at PageID# 285-86.) However, Yost misrepresents the *Lake Erie* court's holding. In *Lake Erie*, the Ohio Supreme Court addressed whether Ohio's worker's compensation statute and regulations permitted Ohio's industrial commission to combine the experience rating of a successor corporation with that of the predecessor corporation. *Id.* at 81. In that context, the court held that both the statute and regulations "imply that a successor in interest, *for workers' compensation purposes*, is simply a transferee of a business in whole or in part." *Id.* at 83, emphasis added. Accordingly, *Lake Erie* is inapposite to the instant case, which does not relate to workers' compensation in any way.

*Albright v. Varicon* is also inapposite because it addresses the assignment and assumption of a *lease* agreement. *Albright v. Varicon*, No. 99967, 2014 WL 265798 (Ohio 8th Dist. Ct. App. Jan. 23, 2014). Yost argues that, according to *Albright*, a successor corporation can "be held liable on the

9

'notion of implied assumption' by rendering performance in accordance with its predecessor's contract." (Doc. No. 16, PageID# 287, quoting *Albright*, 2014 WL 265798 at *5.) However, *Albright* is easily distinguishable from the instant case. In *Albright*, the plaintiff-landlord, Albright, sought to recover rent for the balance of a five-year lease after the defendant-successor, Varicon, vacated the premises and stopped paying rent ten months early. *Albright*, 2014 WL 265798, at *1-3. Varicon argued that it could not be held liable because it did not impliedly assume the lease. *Id.* at *2. The court of appeals disagreed and concluded that there was a genuine issue of material fact regarding "whether Varicon impliedly assumed the five-year lease, given the parties' conduct after the original tenant ICOC ceased to exist." *Id.* at *6. According to the court of appeals, "[w]here a person, other than the lessee, is shown to be in possession of leased premises and paying rent therefor[e], the law presumes that the lease has been assigned to him." *Id.* at *5. The court concluded that "after [the seller] ICOC sold its assets to [Defendant] Varicon and quickly ceased to exist, Varicon continued to occupy the premises and paid rents for more than three years." *Id.* at *6. Thus, *Albright* is distinguishable because it concerns a successor corporation's assumption and performance under a *lease agreement*, which, according to the court of appeals, is subject to a different presumption than applies in the instant matter. *Id.*

Moreover, the question remains how Yost could have believed that Bunge impliedly assumed the NDA's obligations when Yost was the party required to consent to assignment of the NDA to Bunge in the first place. The NDA expressly provided that it could "not be assigned by a party without the other party's prior written consent." (Doc. No. 24, PageID# 357.) Thus, as of September 2011, Yost was on notice that Bunge had acquired Sauer/CFS's margarine assets but that Yost itself *had not consented to assignment of the NDA to Bunge*. (*Id.* at ¶ 13.) Yost could have inquired with

10

Bunge as to the status of the NDA, or otherwise requested that Bunge either ratify the existing NDA or execute a new one in consideration for doing business with Yost. According to its Complaint, however, Yost did none of those things. Irrespective of the fact that Yost was not a signatory to the APA, Yost knew it had not consented to any assignment of the NDA to Bunge, but apparently never pursued the matter further. It is unclear how Yost can now argue that Bunge impliedly assumed the NDA's obligations when Yost knew that it never consented to any such assignment of the NDA to Bunge.

The Court concludes that Bunge, a non-signatory to the Yost-Sauer/CFS NDA, did not expressly or impliedly assume the NDA's obligations and liabilities. Accordingly, the Court concludes that Yost fails to state a claim for breach of contract against Bunge.

### IV. Conclusion

For the reasons set forth above, Bunge's Partial Motion to Dismiss is granted.

**IT IS SO ORDERED.**

Date: September 21, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE